Howry, J.,
delivered the opinion of the court:
French spoliation of this country’s commercial interest and interference with our seafaring people have never been shown to be more flagrantly unjustifiable than under the circumstances disclosed by this record. Indeed, a French civil tribunal of the first instance reversed the first decree condemning the vessel, on a technical ground, it is true, but for reasons which show the unlawful character of the prize court entering the decree of condemnation. Then, a tribunal in cassation annulled everything done by both courts *435 and sent the cause to a tribunal of commerce at La Rochelle. While the decree of the last court again condemned the vessel, the ground stated was not valid. The voyage was lawful and the condemnation illegal.
The questions in the case now arise on the claims made in this court under the act of January' 20, 1885 (23 Stat. L., 283). The vessel was • registered in the names of Seth Adams, Joshua Loring, and Joseph Loring, jr., of Boston. It is alleged in the original complaint that the vessel and cargo were owned by the firm of Adams & Loring, composed of the three persons above named, and • surviving'ownership is stated to be in Adams for the three interests, because upon the division of the assets of said firm all claims on account of French spoliations became the individual property of Adaiiis. An agreement found in the record of "the case of the brig John, Scott, master, is relied upon as establishing such partnership.
In that case the allegation of the complaint is that Adams and Joseph Loring, jr., composed said firm, and in the case at bar the allegation is made that the firm was composed of Adams and the two Lorings. The two statements are inconsistent, and one of them is assuredly erroneous. The agreement relied on does not prove the partnership of the three parties. We accept the proof as most conclusive that the partnership was between Adams and Loring, jr., only. ■ Thjs excludes Loring the elder.
The register of this vessel shows that three persons were ■ the owners, but does not disclose the proportion of ownership. But an inspection of the register of The John shows that the only parties in ownership of that vessel were Seth Adams and Joseph Loring, jr. There is no proof here, as stated, that Joshua Loring was ever a member of the firm. If so, he must have dropped out of the partnership. That does not concern us, however, as to when he ceased to be a member. It does concern the court to notice that in the subsequent proceedings for the settling of the partnership interests in the case of The John the partnership there appears to have existed exclusively between Seth Adams and Joseph Loring, jr. The record title must control in the absence *436 of evidence to the contrary. (The Ganges, 31 C. Cls. B., 175.)
If Joshua 'Loring had an interest as an ■ individual, his legal representatives can not now assert that interest', because the claim as to him was not presented within the two years’ jurisdictional period fixed by the act of'Congress.
Rule 105 (now rule 26) provides for parties' having a common interest to unite in one petition for the recovery of their respective claims, arid for all to be heard together. It is contended that‘this rule relates to underwriters only, and does not apply to vessel' owners. Assuming it to'be true that the rule does apply to vessel, owners, the enforcement of the rule to the extent of now permitting- the individual interest'left out to be admitted after the.period -of limitation fot -interested parties to appear would abrogate the statute. Buies of the court can no more sujDersede :the law'than army-regulations can provide for things inconsistent with an act •of -Congress: ' Properly -interpreted, however, the rule under notice does not atteiript to abrogate the statute, but merely prescribes a convenient method for-claimants having a common interest to. coriie in. It is too late for the legal representatives of Joshua Loring to claim anything 'under- the statute, Or rule, either, because his interest is an adverse interest and not a common interest. ’' -
This phase of the case disposed of, -the next question: is the amount of the interest which the surviving member of the firm as settling partn'er' should have reported growing out of the ownership of the vessel. Defendants contend that in the absence of evidence as to the'particular proportions’which the vessel and cargo are shown to have been'owned the court must presume that such ownership is in equal parts. That is to "say, if the said'firm was-composed of Adams- and the youriger Loring and that firm had ownership iriterests in the vessel with the elder Loring as an individual,' with no proof of the proportions in which the vessel' happened to be owned, the presumption must be carried into the report that the firm of 'Adams & Loring, jr., owned'one-half of the vessel and Loring, sr., owned the other half. Claimants contend that the firm of Adams & Loring owned -two-thirds of the vessel.
*437 We can not adopt the contention of the claimants on this point. In the absence of anything to show that Joshua Loring was recognized as one-third owner, the court, must presume, in view , of all the testimony relating to the property rights of the surviving partner, that the register of the vessel establishes the title to be in the firm'of Adams & Lor-ing, jr., as to one half and in Joshua Loring as to the other half.
The title to a vessel, unless shown to be otherwise,' is that of tenancy in common. Two men shown- to- be in partnership of the whole cargo, but whose names appear on the register of the vessel (which carries the cargo) with a third person, must prove that they own the' vessel as individuals and not as a firm to entitle the two persons to claim one-third each of the ownership of the vessel. The interest of each owner is held in severalty. ín view of the record in the case of The John, Scott (supra), where .the firm of Adams & Loring owned one third, the firm of Hall & Co. owned one-third,’ and James Scott, jr., owned one-third, the presumption is here that this firm of Adams & Loring was a single body, representing a single interest, and they are accordingly held to be owners of one-half of the vessel and entitled to be paid for that one-half interest.
There is another question left to be noticed. Claimants contend that freight should be paid on the gross tonnage of the vessel. The proof shows the amount of cargo actually carried, which is less than the gross tonnage. Two-thirds freight allowance on tonnage is an arbitrary rule- adopted from the rule in commercial cities in the adjustment ■ of average losses. This court has said, in discussing the claims for gross freight, that it must, not be understood as intending any application of this principle to a vessel proceeding under a mere “ expectancy ” of finding cargo at her first port of call. (Schooner John, 22 C. Cls. R.., 408, 463.) With proof showing the amount of cargo carried, we are of opinion that the actual freight must -be computed on the amount carried and not on the vessel’s tonnage. The findings show the result to be an allowance to claimants whose proof entitles them to recover of-one-half the value of the freight earnings, which amount to $706.46. The value of the cargo is fixed by the *438 findings at $14,118 and' of the one-half interest in the vessel at $2,800, in favor of the legal representatives of Adams, the surviving partner of the firm of Adams & Loring.
The findings of the court and its conclusions will be reported to Congress, together with a copy of this opinion.